IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SHAHED FARASAT,                         *

    Plaintiff,                      *

        v.                      *          CIVIL NO.: WDQ-12-1276

WELLS FARGO BANK, N.A.                   *

    Defendant.                      *

                    *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Shahed Farasat sued Wells Fargo Bank, N.A. ("Wells Fargo")

for fraud and contract claims.  Pending is Wells Fargo's motion

to dismiss for failure to state a claim.  For the following

reasons, Wells Fargo's motion will be granted.

I.   Background[1]

Farasat owns and resides at 110 Hawthorne Avenue in

Baltimore, Maryland.[2]  ECF No. 1 ¶ 14.  To purchase the property,

--------

[1] For the motion to dismiss for failure to state a claim, the
well-pled allegations in the complaint are accepted as true.
*Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In
reviewing the motion to dismiss, the Court may consider
allegations in the complaint, matters of public record, and
documents attached to the motion to dismiss that are integral to
the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] Some documents describe the property as situated in Pikesville,
but the ZIP Code is consistent throughout. *See, e.g.*, ECF No. 1-
10 at 6.

Farasat obtained a mortgage, under which Wells Fargo[3] was assigned servicing rights. *Id.* ¶ 16.

In December 2008, Farasat contacted Wells Fargo about his mortgage and was told that he needed to miss payments to be eligible for repayment assistance.[4] *Id.* ¶¶ 18, 56.1. In March 2009, Farasat lost his job. *Id.* ¶ 17. The same month, he again contacted Wells Fargo, and was told that he needed to miss payments to be eligible for assistance under the Home Affordable Modification Program ("HAMP").[5] *Id.* ¶¶ 18, 56.2.

In April 2009, Farasat fell behind on his mortgage payments. *Id.* ¶ 17. On September 15, 2009, foreclosure proceedings began in the Circuit Court for Baltimore County,

---

[3] The servicer was Wells Fargo Home Mortgage, Inc. d/b/a/ America's Servicing Co., Wells Fargo's predecessor by merger. ECF No. 1 ¶ 11. For clarity and consistency, the Court will refer solely to Wells Fargo.

[4] Farasat has not alleged the nature of--or reason for--his inquiry.

[5] Under HAMP, created by the Department of the Treasury under the Troubled Asset Relief Program, participating lenders are required to offer modifications if borrowers meet certain prerequisites. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012). After the servicer determines that a borrower is eligible, for three or more months the borrower repays under a Trial Period Plan ("TPP"), containing new repayment terms calculated under the HAMP guidelines. *Id.* at 557. If the borrower fully complies with the TPP during the trial period, including making all payments, the servicer must offer a permanent modification. *Id.*

Maryland. *See* ECF Nos. 1-6, 5-4 at 2. In April 2010,[6] Wells Fargo "promised" that if Farasat submitted an application, Wells Fargo would process it under HAMP. *Id.* ¶ 19.

On May 1, 2010, Farasat submitted a HAMP application to Wells Fargo. *Id.* ¶ 22. In the following months, Wells Fargo requested additional documentation, "promising" that it would continue to process the application. *Id.* ¶ 25.

On September 30, 2010, Farasat submitted another HAMP application. *Id.* ¶ 27; *see* ECF No. 1-10 (application).[7] Farasat's hardship letter states that he sought "modification of the loan on 110 Hawthorne Avenue, which is home to my mother and I (*sic*)." ECF No. 1-10 at 6.

Farasat included in the application his lease with Karen Merkle. *Id.* at 21-24. The lease purported to rent 110 Hawthorne Avenue to Merkle starting on October 1, 2010. *Id.* at 21. The paragraph entitled "Additions and/or Exceptions" listed

---

[6] Farasat has not alleged any contact with Wells Fargo between April 2009 and April 2010.

[7] The application that Farasat attached to his complaint is "[n]ot dated Sept. 30, 2010, but otherwise substantively identical to the application submitted on Sept. 30, 2010." ECF No. 1-10 at 1. In an affidavit submitted to the circuit court, Farasat affirmed that the "September 30, 2010 application is identical to the November application in the important respects." ECF No. 1-7 ¶ 6. The request for modification and hardship letter bear dates after September 30, 2010. ECF No. 1-10 at 5-7. Farasat has not explained the discrepancies in the dates or alleged that a HAMP application was submitted after September 30, 2010.

"1/2 Basement and Attic space as needed." *Id.* at 24.  Neither "Additions" nor "Exceptions" is circled or struck through.  *Cf. id.*  The lease also provided that all notices to Farasat were to be served at "110 Hawthorne Ave." *Id.*  The lease had no provision for continued occupancy by Farasat.

On October 25, 2010, Wells Fargo denied modification under HAMP, stating Farasat "d[id] not live in the property as [his] primary residence." ECF No. 1-12 at 2.

On November 9, 2010, Wells Fargo directed the substitute trustees to sell the home at a foreclosure sale.  ECF No. 1 ¶ 36.  On December 29, 2010, after retaining counsel, Farasat filed exceptions to the sale.  *Id.* ¶ 37; ECF No. 1-14.  On March 16, 2011, Farasat counterclaimed against Wells Fargo alleging grounds substantially similar to this case.  *See* ECF No. 5-3.  On June 23, 2011, the substitute trustees moved to withdraw the report of sale and dismiss the case without prejudice.  ECF Nos. 1 ¶ 38, 1-13.  The circuit court granted the motion and closed the case.[8]  *See* ECF No. 5-4.

On May 11, 2012, Farasat sued Wells Fargo in this Court, alleging that Wells Fargo never intended to modify his mortgage and was simply seeking late fees and penalties.  *See* ECF No. 1

---

[8] The circuit court docket sheet lists the case as "Closed/Active."  ECF No. 5-4 at 2.  No decision is listed for Farasat's counterclaim, but July 5, 2011, the same date as the motion to dismiss, is listed as the close date.  *Id.* at 8-9.

¶¶ 5-6.  Farasat seeks specific performance and damages on the grounds of: (1) violations of the Maryland Consumer Protection Act,[9] (2) fraud, (3) promissory estoppel, (4) negligence, (5) negligent misrepresentation, and (6) breach of implied-in-fact contract.  *Id.* ¶¶ 51-93.

On June 8, 2012, Wells Fargo moved to dismiss, arguing that the pending state court action required dismissal, and Farasat failed to state a claim.  ECF No. 5.  On June 25, 2012, Farasat opposed the motion, ECF No. 7, and on July 11, 2012, Wells Fargo replied, ECF No. 8.[10]

II.  Analysis

    A.  Legal Standards

        1.  Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

[9] Md. Code Ann., Com. Law §§ 13-101 *et seq.*

[10] On November 9, 2012, Farasat filed a "supplemental argument"--essentially reiterating an argument in his opposition--ECF No. 9, to which Wells Fargo responded on November 21, 2012, ECF No. 10.  These documents are essentially a surreply and a sursurreply, which are not permitted without the Court's leave; the Court will not consider them. *See* Local Rule 105.2(a) (D. Md. 2012).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2.    Particularity Requirement for Fraud Allegations

Fed. R. Civ. P. 9(b) requires that "the circumstances constituting fraud be stated with particularity."  The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991).  To satisfy the rule, a plaintiff must "identify with some precision the date, place, and time of active misrepresentations or the circumstances of active concealments, specifying which Defendant . . . is . . . supposedly responsible for those statements or omissions." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

The Court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

B.    Pending State Court Action

Wells Fargo argues that this case should be dismissed because there is an action with "virtually identical allegations of fact and asserted claims" pending in state court.  ECF No. 5-2 at 4-5.  Farasat asserts that Wells Fargo was not a party to

7

the suit in which he brought the counterclaim, and the counterclaim itself was "likely dismissed by operation of law." ECF No. 7-1 at 22. Wells Fargo responds that Farasat's factual assertions about the state case are incorrect. ECF No. 8 at 2-3.

Farasat is factually incorrect; Wells Fargo was involved in the state case. Wells Fargo Home Mortgage, Inc., acknowledged by Farasat as Wells Fargo's predecessor by merger, *see* ECF No. 1 ¶ 11, is named in Farasat's counterclaim. *See, e.g.*, ECF No. 5-3 at 2. Farasat's challenge to the pendency of the state court action appears to have merit. The circuit court's docket sheet shows the case as "Closed/Active" and there have been no filings or rulings since July 5, 2011, when the substitute trustees' motion to dismiss the case without prejudice was granted. *See* ECF No. 5-4 at 9. The counterclaim was closed the same day. *Id.* at 8.

Wells Fargo's argument fails, notwithstanding the status of the circuit court case. Wells Fargo relies upon *Hyman v. City of Gastonia*, 466 F.3d 284 (4th Cir. 2006) for the principle that this Court must dismiss this case because there is a pending state court action. ECF No. 5-2 at 2. Wells Fargo's characterization of *Hyman* is incorrect.

In *Hyman* the district court originally dismissed the case for insufficient service of process. *Hyman*, 466 F.3d at 286.

8

The plaintiff appealed the dismissal to the Fourth Circuit. *Id.*
While the appeal was pending, the plaintiff filed a second
action against the same defendant in the same district court.
*Id.* The court dismissed the second case under North Carolina
law, which permits abatement as an affirmative defense if "a
substantially identical, earlier-filed action is pending on
appeal." *Id.*

Rather than address the propriety of the dismissal, the
Fourth Circuit's analysis in *Hyman* concerned *its own* lack of
jurisdiction under the obscure 28 U.S.C. § 2105.[11] *See Hyman*,
466 F.3d at 287-89. Concluding that it lacked jurisdiction, the
Fourth Circuit was unable to review the district court's ruling.
*Id.* at 291. *Hyman* provides no support for Wells Fargo's
position.

Contrary to Wells Fargo's position, and decided 14 days
after *Hyman*, *Great American Insurance Co. v. Gross*, 468 F.3d 199
(4th Cir. 2006) held that, absent exceptional circumstances,
"the pendency of an action in state court is no bar to
proceedings in federal court concerning the same matter." *Id.*

---

[11] Wells Fargo briefly refers to, but does not discuss, the
application of § 2105. *See* ECF No. 5-2 at 1. That provision is
inapplicable to this court. *See* 28 U.S.C. § 2105 ("There shall
be no reversal in the Supreme Court or a court of appeals for
error in ruling upon matters in abatement which do not involve
jurisdiction.")

at 206.   In deciding whether to abstain in favor of the state-
court litigation, the Court considers six factors:

> (1) whether the subject matter of the litigation involves
> property where the first court may assume *in rem*
> jurisdiction to the exclusion of others; (2) whether the
> federal forum is an inconvenient one; (3) the desirability
> of avoiding piecemeal litigation; (4) the relevant order in
> which the courts obtained jurisdiction and the progress
> achieved in each action; (5) whether state law or federal
> law provides the rule of decision on the merits, and (6)
> the adequacy of the state proceeding to protect the
> parties' rights.

*Id.* at 207-08.   Assuming that the state court litigation is

still pending, few factors favor abstention.[12]   As "abstention is

the exception, not the rule" these few factors, particularly

considering that the state court case may be closed, are

insufficient to require dismissal.   *See id.* at 208.

    C.   Allegations in the Complaint

Wells Fargo seeks dismissal of all counts arguing that HAMP

does not provide a private right of action.   ECF No. 5-2 at 6.

It also asserts that the individual claims also fail.   *Id.* at 8-

17.

    1.   Private Right of Action Under HAMP

Wells Fargo first argues HAMP does not provide a private

right of action.   *Id.* at 6.   Farasat asserts that, simply

---

[12] The state court obtained jurisdiction first, but appears to
have had no further proceedings than this Court.  *See* ECF No. 5-
4.  As alleged, state law provides the rules of decision.  *See*
ECF No. 1 ¶¶ 51-93.  If the state action were pending, it would
likely protect the parties' rights.

because Wells Fargo's actions occurred in connection with HAMP, it is not shielded from state tort liability. ECF No. 7-1 at 4.

Wells Fargo is correct that there is no private right of action under HAMP. *See, e.g., Allen v. CitiMortgage*, Civil No. CCB-10-2740, 2011 WL 3425665, at *4 (D. Md. Aug. 4, 2011). This does not mean, however, that Wells Fargo is "wholly immunized for [its] conduct so long as the subject of the transaction is associated with HAMP." *Vida v. OneWest Bank, FSB*, Civ. No. 10-987-AC, 2010 WL 5148473, at *5 (D. Or. Dec. 13, 2010). State law claims may be proper vehicles for bringing claims associated with HAMP. *See Allen*, 2011 WL 3425665, at *5. The Court will analyze each of Farasat's claims, which are brought under state law. *See Legore v. OneWest Bank, FSB*, Civ. No. L-11-0589, 2012 WL 4903087, at *4 (D. Md. Oct. 15, 2012)

      2.   The Lease and Wells Fargo's Denial of
             Modification

Farasat's theory of the case is that Wells Fargo did not process his application under the HAMP guidelines but simply denied it to get various service fees. *See* ECF No. 1 at ¶¶ 5-6. Farasat describes the proposition that 110 Hawthorne Avenue was not his primary residence as a "bogus assertion." *E.g.*, ECF No. 1 ¶ 34. Wells Fargo asserts that its interpretation that the lease indicates that Farasat no longer occupied the house was not unreasonable. *E.g.*, ECF No. 5-2 at 12.

The terms of the lease are clear.  The lease states that Farasat leased "the premises located at 110 Hawthorne Ave. in the city of Pikesville, MD" to Merkle.  ECF No. 1-10 at 21. Nothing in the lease states that Farasat would retain any part of the premises for residential purposes.  *Cf. id.* at 21-24. The location where notice to Farasat was to be served is listed as "110 Hawthorne Ave."  *Id.* at 24 ¶ 28.  The only part of the lease that imposed limitations on Merkel's use is paragraph 27 headed "Additions and/or Exceptions" with the words "1/2 Basement and Attic as needed."  *Id.* ¶ 27.  Whether this provision is meant to be an "Addition" or "Exception" is unclear; neither word is circled or struck through.  *Cf. id.*

Farasat claims that Wells Fargo misinterpreted the lease as indicating that he was not resident there.  ECF No. 7-1 at 7. Specifically, he asserts that "[t]he express terms of the lease . . . made it clear that [Farasat] would continue to use '1/2 Basement' as his residence, and would further use 'Attic space as needed.'"  *Id.*[13]  Interpreting the lease in the light most favorable to Farasat, such an interpretation is not reasonable.[14] Even with the benefit of the hardship letter, Wells Fargo was

---

[13] Farasat does not allege this interpretation in the complaint, only in his opposition to the motion to dismiss.

[14] To the extent the hardship letter conflicts with this interpretation of the lease, the lease conveyed Farasat's right of occupancy to Merkle.  *See* ECF No. 1-10 at 21.

not unreasonable in determining that Farasat did not reside at 110 Hawthorne Avenue, as the lease does not appear to leave him any right of occupancy.

One of the HAMP eligibility criteria is that the property be--and remain--owner-occupied.[15]  ECF No. 1-8 at 32.  For the purposes of evaluating Farasat's claims in the context of HAMP, Wells Fargo's determination that the property was not owner-occupied was not "bogus" or otherwise unreasonable.  Accordingly, the facts alleged by Farasat show that Wells Fargo denied the HAMP modification because the information available to it indicated that Farasat did not reside in the property.  *See* ECF No. 1-8 at 32.

       3.   Individual Claims

          a.   Count I: Violations of the Maryland Consumer Protection Act

Farasat alleges numerous statements made by Wells Fargo in violation of the Maryland Consumer Protection Act ("MCPA").  ECF

---

[15] There are exceptions for the owner occupying a property that was not originally owner-occupied and for temporarily displaced borrowers.  ECF No. 1-8 at 32.

    Also under the HAMP Guidelines, Wells Fargo was required to obtain a credit report for Farasat to verify his occupancy.  *See* ECF No. 1-8 at 52.  "If the credit report is inconsistent with other information provided by the borrower, the servicer must use good business judgment in reconciling the inconsistency."  *Id.*  The record does not contain a credit report or any allegation about one.  Generally, courts do not second guess "business judgments."  *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 424 (Md. 2009) (describing the business judgment rule).

No. 1 ¶ 56.  Wells Fargo assets that the National Bank Act
("NBA") preempts the MCPA and that its statements were not false
or misleading.[16]  ECF No. 5-2 at 13-14.  Farasat argues that his
claims meet the requirements of the MCPA.

i.    Preemption

In asserting that the MCPA is preempted by the NBA, Wells
Fargo relies, without analysis, on *Wittenberg v. First
Independent Mortgage Co.*, 2011 WL 1357483 (N.D. W. Va. Apr. 11,
2011), which held, with little discussion, that the NBA
preempted West Virginia's Consumer Protection Statute.  ECF No.
5-2 at 13; *see Wittenberg*, 2011 WL 1357483, at *14.  In *O'Neal
v. Capital One Auto Finance, Inc.*, 2011 WL 4549148 (N.D. W. Va.
Sept. 29, 2011), the same court considered the preemption issue
and rejected *Wittenberg*'s analysis.  *See O'Neal*, 2011 WL
4549148, at *2-7.  Other courts have also rejected Wells Fargo's
preemption argument for state consumer protection laws.[17]

---

[16] In its reply brief, Wells Fargo also asserts that two of the
misrepresentations are barred by the statute of limitations.
*See* ECF No. 8 at 9.  The statute of limitations is an affirm-
ative defense.  *See* Fed. R. Civ. P. 8(c)(1).  Affirmative
defenses raised for the first time in a reply brief are waived.
*See Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir.
2003); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp.
2d 731, 734 (D. Md. 2006).

[17] *See, e.g., Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D.
533, 554-55 (N.D. Cal. 2012); *In re JPMorgan Chase Mortg.
Modification Litig.*, No. 11-md-02290-RGS, 2012 WL 3059377, at
*9-10 (D. Mass. July 27, 2012).

Under *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007), "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Id.* at 11. The MCPA applies generally to commercial practices, not only to banks. *See* Md. Code Ann. Com. Law § 13-301. Under *Watters*, the MCPA as a statute of general application is not preempted. *See Sutcliffe*, 283 F.R.D. at 554-55.

### ii.   Statements Under the MCPA

To bring an action under the MCPA, Farasat must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [him] actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (*citing Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)).

Farasat alleges six misrepresentations, which must be analyzed under Fed. R. Civ. P. 9(b). *See Spaulding v. Wells Fargo Bank, N.A.*, Civ. No. GLR-11-2733, 2012 WL 3025116, at *6 (D. Md. July 23, 2012). The first two are statements by Wells Fargo, in December 2008 and March 2009, that Farasat needed to miss mortgage payments to qualify under HAMP. ECF No. 1 ¶¶ 56.1-56.2. These statements were made before Farasat had missed a payment on his mortgage in April 2009. *See id.; id.* ¶ 17. The HAMP guidelines require the mortgage loan to be delinquent

15

or default to be reasonably foreseeable.  ECF No. 1-8 at 32.  If
the borrower is current, the mortgage servicer determines
whether default is imminent.  *Id.* at 49.  When current on his
loan, Farasat was told that he needed to miss payments, as
contemplated by the HAMP guidelines.  He has not shown the
misrepresentation required under the MCPA.  *See Stewart*, 859 F.
Supp. at 769.

Two alleged misrepresentations concern Farasat's being
told his application would be evaluated under HAMP and that he
was not eligible because he did not use the property as his
primary residence.  ECF No. 1 ¶¶ 56.3-56.4.  As discussed above,
Wells Fargo evaluated the application under HAMP and reasonably
determined, using Farasat's documentation, that he was not
entitled to a modification.  *See supra* Part II.B.  As alleged,
these statements were not misrepresentations.

Farasat also claims that Wells Fargo made a false statement
in saying that he was in default and starting the foreclosure
procedure because he was entitled to a HAMP modification.  ECF
No. 1 ¶ 56.6.  Farasat's conclusion is incorrect--the
documentation showed that he was not entitled to a modification.
Farasat has not alleged misrepresentation.

The final alleged misrepresentation by Wells Fargo was its
January 10, 2012 letter stating that Farasat had not submitted
sufficient documentation to be considered for a HAMP modifica-

16

tion.  ECF No. 1 ¶ 56.5.  Farasat misstates Wells Fargo's letter, which did not say that he did not supply sufficient documentation, but that he "did not provide [Wells Fargo] with all of the information needed within the required time frame." ECF No. 1-16.  Further, nothing connects the January 10, 2012 letter with HAMP or the documentation submitted in 2010.[18] Nothing in the January 10, 2012 letter connects the denial with HAMP or Farasat's previous submissions.  Similarly, the complaint does not connect the January 10, 2012 letter with any other allegations.  *Cf.* ECF No. 1 ¶ 56.5.  This letter was written well after the closure of the state court suit. Therefore, there is no allegation how the letter's statement is false.  As Farasat has merely alleged that this statement was a misrepresentation, he has failed to state a claim under Rule 9(b).  *See Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 799 (D. Md. 1998).  Count I will be dismissed.

        b.    Count II: Fraud

Farasat alleges that (1) Wells Fargo made false representations that it would process his application under HAMP, (2) Wells Fargo intended to defraud him, and (3) he

---

[18] For example, the January 10, 2012 letter has a subject of "Your request for mortgage payment assistance" and a section with a decision entitled "Here's what we found."  ECF No. 1-16. In contrast, the October 25, 2010 letter's subject was "Home Affordable Modification Program," and the section with the decision was "Decision on the Federal Government's Home Affordable Modification Program."  ECF No. 1-12.

reasonably relied on the misrepresentation by trying to modify
his mortgage, not retaining counsel, and not trying to sell his
home.  ECF No. 1 ¶¶ 60-63.  Wells Fargo argues that Farasat
cannot show that (1) it knowingly misrepresented the property's
occupancy, (2) he relied on Wells Fargo's reason for denial of
his HAMP application, (3) that the representation was for the
purpose of defrauding, and (4) the exhibits provided by Farasat
show that the representations were not misrepresentations.  ECF
No. 5-2 at 16.

> To establish fraud, a plaintiff must show that

> > (1) the defendant made a false representation to the
> > plaintiff, (2) the falsity of the representation was
> > either known to the defendant or the representation
> > was made with reckless indifference to its truth,
> > (3) the misrepresentation was made for the purpose
> > of defrauding the plaintiff, (4) the plaintiff
> > relied on the misrepresentation and had the right to
> > rely on it, and (5) the plaintiff suffered
> > compensable   injury   as   a   result   of   the
> > misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005).  As discussed
above, the documentation provided by Farasat reflects that Wells
Fargo processed Farasat's HAMP application and denied
modification because he failed to meet the guidelines.  *See
supra* Part II.B.  That Wells Fargo was attempting to mislead
Farasat is possible, but not plausible.  The reasonable
inference is that Wells Fargo denied the modification because
the lease that Farasat submitted was reasonably interpreted as

showing that Farasat was no longer a resident of the property,
not out of a motive to defraud him.  As facts do not "allow[]
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged," this claim must be
dismissed.  *Iqbal*, 556 U.S. at 678.

          c.   Counts III and VI: Promissory Estoppel and
             Implied-in-Fact Contract

Farasat alleges that Wells Fargo promised to process his
application under HAMP and that it would modify the loan if he
met the eligibility criteria.  ECF No. 1 ¶¶ 67-68.  Farasat
further alleges that "[h]ad Wells Fargo kept its promises, and
processed the application and made a decision thereon pursuant
to the HAMP Guidelines, Mr. Farasat would have been issued a
TPP."  *Id.* ¶ 70.  Wells Fargo argues that it processed the
application, and Farasat was ineligible for the modification.
ECF No. 5-2 at 9.

The doctrines of promissory estoppel and implied-in-fact
contracts provide avenues of recovery for plaintiffs when there
is a failure of the traditional contract elements.  *See Cnty.*
*Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*,
747 A.2d 600, 606 (Md. 2000).  If Wells Fargo had a contractual
obligation to evaluate Farasat's application through either an
implied-in-fact contract or promissory estoppel, it kept its
promise.  As discussed above, Wells Fargo's determination that

19

Farasat did not live in the property as his primary residence was not unreasonable.  *See supra* Part II.B.  Wells Fargo did not modify Farasat's loan because he did not appear to meet the eligibility criteria.  *See* ECF No. 1-8 at 32.  Farasat cannot prevail under a promissory estoppel or implied-in-fact contract theory on the facts alleged.  These claims will be dismissed.

> ### d.   Counts IV and V: Negligence and Negligent Misrepresentation

Farasat alleges that Wells Fargo owed him a tort duty as his mortgage servicer and breached that duty by failing to properly process his application and modify his mortgage.  ECF No. 1 ¶¶ 41, 76-77.  Wells Fargo asserts that it owed Farasat no duty and that, even if it did, there was no breach.  ECF No. 5-2 at 11-12.  Farasat responds that a bank owes a duty to its loan customer.  ECF No. 7-1 at 20-21.

To prevail upon a claim of negligence, the plaintiff must show that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was proximately caused by the breach.  *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994).

Farasat asserts that Wells Fargo owed him a duty under *Jacques v. First National Bank of Maryland*, 515 A.2d 756 (Md. 1986).  ECF No. 7-1 at 20.  Wells Fargo disagrees.  ECF No. 8 at 10-11.

In *Jacques*, a case involving an unusually structured bank loan application, the Maryland Court of Appeals held that a contract may give rise to a bank's tort duty to a loan applicant. *See Jacques*, 515 A.2d at 762. The *Jacques* court recognized, however, that negligent breach of contract without an independent obligation, "is not enough to sustain an action sounding in tort." *Id*. at 759 (*quoting Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)). Courts have consistently held that HAMP does not create *Jacques* duties, and there is, therefore, no duty in this case. *See Legore*, 2012 WL 4903087 at *5 (collecting cases). Farasat's negligence and negligent misrepresentation claims will be dismissed.[19]

III. Conclusion

For the reasons stated above, Wells Fargo's motion to dismiss will be granted.

_____     _____
12/19/12
Date                         William D. Quarles, Jr.
                             United States District Judge

---

[19] If Wells Fargo owed a duty to Farasat, it did not breach that duty. As discussed above, *see supra* Part II.B, the facts alleged by Farasat show that Wells Fargo processed his HAMP application and reasonably denied it because he did not appear to be eligible.

21